## TEXAS ELECTRIC SERVICE CO. v. PERKINS et ux. (No. 1286—5348.)

Commission of Appeals of Texas, Section A. Jan. 29, 1930.

Fred T. Arnold and Marshall & King, all of Graham, and Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for plaintiff in error.

W. L. Scott, of Graham, for defendants in error.

CRITZ, J.  This suit was instituted by the Texas Electric Service Company, a corporation, having the right of eminent domain, by filing with the county judge of Young county a petition for condemnation against O. S. Perkins and wife.  Upon the filing of the petition the county judge appointed commissioners who gave notice of the hearing.  The hearing was had in conformity with the notice and an award made by the commissioners assessing the damages at $1,250.  The electric company appealed from this award to the county court of Young county.  Issue was joined by the pleadings of the parties in the county court, and the trial resulted in a judgment assessing the damages at $3,518.  The electric company duly appealed from this judgment to the Court of Civil Appeals for the Second District at Fort Worth, which court in effect held the petition so fatally defective as to be insufficient to confer jurisdiction on the county court in the incipiency of the proceedings, and reversed and remanded the cause.  11 S. W.(2d) 543.

The grounds on which the Court of Civil Appeals reversed and remanded this cause were not raised or assigned by either side to the litigation, the Court of Civil Appeals holding the error fundamental and apparent of record.  The grounds on which the Court of Civil Appeals held the petition insufficient to confer jurisdiction were that the petition failed to describe the land sought to be condemned.

Both parties were dissatisfied with the holdings of the Court of Civil Appeals, and we have the peculiar circumstance of both sides presenting petitions for writs of error to the Supreme Court and assigning the same holding as error, though in separate petitions.  To some extent the two petitions for writs of error attack the holding of the Court of Civil Appeals upon different grounds.  ·

The petition filed by the electric company

with the county judge, omitting formal parts, is as follows:

"That your petitioner has planned to construct and is now purposing, prepared and ready to construct certain lines consisting of poles, wires, cross arms, insulators, guy wires and such apparatus, devices, and arrangements, as may be necessary and proper to maintain and operate the same for the purpose of transmitting and transporting electric current and power of high voltage, between the city of Graham in the County of Young and Archer City, in Archer County, Texas, and said lines will be run, operated maintained over, across upon and through the following described real estate, the fee simple title of which is owned by the said O. S. Perkins and wife, L. E. Perkins out of T. E. & L. Co. Survey No. 206 in Young County, Texas; and more particularly described as follows:  North one-half of T. E. & L. Co. Survey No. 206.

"Said lines are to be located, erected, maintained and operated over, across, upon and through said land as follows:  Beginning at Survey station 2546 plus 25, same being a point in center line of fence running East and West between the lands of O. S. Perkins and M. F. Wells, the same being 666 feet West of the O. S. Perkins South East corner.  Thence North 20 degrees 40 Minutes West 2152 feet to Survey Station No. 2567 plus 77 to center of fence dividing the lands of O. S. Perkins and C. H. Sanford, said point being 1436 feet West of the Northeast corner of the O. S. Perkins land.

"Said line will be constructed substantially as follows:  4 'H' frames and 2 Guys will be erected.  Said 'H' frames each consisting of two poles and not exceeding 22 inches in diameter at the ground line, and 50 feet in length erected in an upright position to a depth of not exceeding 9 feet and not exceeding fifteen feet apart with cross arms not exceeding (2) two in number to each 'H' Frame and not exceeding twenty feet in length, fastened upon 'H' frames are right angles to the direction of said lines at a height of not less than forty feet above the surface of the ground with metallic wires not exceeding six (6) in number to be from 'H' frame to 'H' frame and sustained in the air by attachments to said cross arms, together with such poles, braces, screws, pins, insulators and other fasteners, appliances and attachments as may be necessary and proper for attaching said cross arms to said poles, and said wires to said cross arms and poles to the ground.

"Guy wires herein may consist of metalic wires or rods not exceeding one inch in diameter and such devices as may be proper for attaching or fastening same to said poles or other poles of said lines and thence to the ground.  The devices for fastening and holding said guy wires into the ground not to occupy a space of ground more than three (3)

feet square, and not more than fifteen (15) feet deep, and such anchors when finally located to be not less than five feet below the surface of the ground.

"For clearer information as to the construction of said lines petitioner hereto attaches and refers to the same as a part thereof, a blue print or plat giving the substantial location and construction of said line across the land above described which is marked Exhibit 'A'; that said land will not be fenced or enclosed by petitioner, and no uses thereof is to be made by the petitioner except for the erection of said poles, lines, or wire and guy wires, and that the operation and maintenance thereof, and the use of said land by the owner thereof, is not to be obstructed or interfered with except so far as this may be done by said poles and the construction and maintenance of operating said lines, and except that no growth or obstruction is to be permitted within such proximity to said line as to endanger the same by fire, storm or otherwise, or to cause the same to become dangerous in any wise to life or property; and for this purpose and reason it will be necessary to remove and thereafter prevent the growth of such trees, limbs, or branches, as may in any way or in any extent now endanger the same or cause the same to become dangerous by further growth or otherwise.

"Your petitioner represents that it is necessary for the establishment, location, maintenance and operation of said lines that your petitioner acquire, take, hold, use, and enjoy the above portion described of the real estate mentioned for the purpose of right of way or easement, for said lines as located, described, and designated, above together with the apparatus, poles, wires, cross arms, insulators, guy wires, devices and arrangements necessary or proper to maintain and operate, repair and rebuild the same, and that your petitioner can not agree with the said defendants upon the damage occasioned by the acquisition of such right of way."

The map and blueprint referred to in the petition and attached thereto and marked Exhibit A shows a straight line across Perkins' land, the points of entrance and exit, and the designation of poles, guy wires, cross-arms, location of the poles, etc. There is no designation on the map of the land on the two sides of this line, upon which no structures, trees, etc., are to be allowed to be maintained, and in this particular the map does not aid the written part of the petition.

Notices issued by the commissioners, and duly served upon the owners, described the land sought to be condemned, and the rights sought thereunder substantially the same as the petition, but contain the following additional information not contained in the petition: "Together with the right to remove from said land all trees and parts thereof for a distance of 50 feet on each side on the lo-cated center line of the above described transmission line."

Perkins and wife filed a written answer with the commissioners. We copy the following from such answer: "However in the alternative, if the plaintiff or applicant will not yield in its present plan, but insists upon going across the tract of land described in its statement filed herein and the notice thereof, then these defendants or respondents state and would show unto the Commissioners that said right-of-way one hundred feet wide and 2152 feet long will take up approximately four and eighty-eight ——— (4.88) acres of land, the actual taking of which and for the use and purposes of which it is being taken by the applicant would deprive these defendants of the use thereof and which is of the reasonable fair market value of One Hundred Dollars ($100.00) per acre and all of the total value of four hundred and eighty-eight dollars ($488.-00), and that because in going across same to put down the poles and-string the wires by the use of automobiles and trucks and other vehicles, holes, gulleys, and washes will be made, not only across the part taken as the right-of-way, but the adjoining land, all of which said one hundred and sixty acres of land is of the fair market value of One hundred Dollars per acre and all of the total value of sixteen thousand dollars ($16,000.-00), and that because said right-of-way will go right acros the heart of it and because of the washing and gulleys and damage thereto and because of the cutting of said tract of land in two tracts, the fair market value of the entire tract as a whole will be reduced in value, that is, in its fair market value as well as also in its use and enjoyment to these defendants, the sum of Four thousand dollars ($4,000.00), that is the fair market value of the entire tract now being sixteen thousand dollars ($16,000.00) and the fair market value of the entire tract after same is taken and said poles and wires, etc. are strung across same will not exceed the sum of seventy-five dollars ($75.00) per acre, the difference between the present market value and its then value being twenty-five dollars ($25.00) per acre or a total of four thousand dollars ($4,000.00), which these defendants will be damaged."

When the case reached the county court on appeal from the award of the commissioners, Perkins and wife filed their amended answer in which they expressly admitted notice and all jurisdictional matters, as contained in the plaintiff's original petition, and further pleaded that, pursuant to the proceedings already had, the electric company had condemned and taken the right of way across the land described in the petition, and that such land is situated in Young county, Tex.

This answer of Perkins and wife also contains the following allegations:

"And these defendants state further and

would show unto the court, that pursuant to said condemnation proceedings filed herein, that thereafter and to-wit during the month of May, A. D. 1927, the plaintiff took possession of said easement or right-of-way, across their lands and homestead aforesaid, over and along that portion of same described in plaintiff's petition and exhibits and then and there erected and caused to be erected over, along said easement, across their said land its electric transmission line, poles, cross-arms, and guy wires in the manner, and number, size, dimensions and extent, as in its original notice and petition and exhibits thereto stated and contained, said right-of-way or easement being in width fifty feet wide on either side of said line and in all a width of one hundred feet, of which it took control, possession and dominion, with the right to clear and keep same clear for said width of all timber, buildings and other structures as set out in its notice and petition aforesaid.

"And these defendants state and would show unto the court, that the taking of said easement and right-of-way across their said land, which extends diagonally across same, as set out in its notice, petition and exhibits 2152 feet long and 100-feet wide, will take up and does take up, approximately four and eighty eight one hundredths (4.88) acres of land, within said easement or right-of-way the actual taking of which 'and for the use and purpose for which it is and was taken by plaintiff, thereby actually deprives these defendants of their use and dominion over same which immediately before said taking was of the reasonable fair market value of $100.00 per acre, and all of a total value of $488.00, the taking of which in the manner aforesaid thereby thus damages these defendants to the extent of said value of said land in said sum of $488.00.

"And these defendants allege and would show further unto the court, that by virtue of the setting of said poles across their said lands, and the erection of the wires, cross arms and guy wires thereon, thereby caused their said land to begin to wash into gulleys, holes and washes, not only across the part actually taken as a right-of-way, but the adjoining land as well, all of which said one hundred sixty acres of land, embraced in said tract, as described in plaintiff's petition, was immediately before said condemnation proceedings, of the reasonable fair market value of one hundred dollars per acre, and all of a total value of Sixteen Thousand dollars ($16,000.00).

"That because said right-of-way goes right across the heart of said land and because of the washing and gulleys, and damage thereto, and because of the cutting of said tract of land into two tracts, the fair market value of the entire tract as a whole be reduced in value, that is, its fair market as well as also

its use and enjoyment to these defendants has been reduced, and these defendants thereby damaged to the extent and in the sum of $4,000.00, in that immediately prior to said condemnation and taking of same, said land was of the aforesaid fair market value of $100.00 per acre, or a total of $16,000.00, and that by taking and condemning of same, in the manner aforesaid, and for the purposes aforesaid, and the erection and construction of its said transmission line over and across same, as aforesaid, thereby diminished its fair market value, not only to the extent of the aforesaid $488.00 for the strip actually taken, but also, but twenty five dollars per acre for the remainder of the entire tract so that remainder of the entire tract, not actually embraced in said right-of-way, immediately thereafter was and is of the fair market value of not exceeding the sum of seventy five dollars per acre or a total of $11,634.00, the difference between that amount, and $16,000.00, or $4,366.00, being their actual damage occasioned thereby, and which these defendants allege they are and have been damaged by the plaintiff in the manner aforesaid and to the extent aforesaid."

We will here say that, while the Court of Civil Appeals reversed and remanded the case, its opinion virtually amounts to an instruction to the trial court to dismiss the proceedings and leave the electric company with its power line erected, and in the position of a pure trespasser on the land. The consequent complications show why both parties are here complaining.

We think the Court of Civil Appeals was in error in holding the petition of the electric company insufficient to confer jurisdiction on the county judge to appoint the commissioners. Of course, if the county judge had jurisdiction to appoint the commissioners, they had the right to hear the cause and determine the damages, which includes the value of the land taken and the incidental damages to the balance of the tract not taken. Furthermore, if the commissioners had jurisdiction to determine the damages to the land not taken, they had the right to determine and define what land was so damaged. If the commissioners had jurisdiction, the county court on appeal also had jurisdiction.

There is no question raised but that the petition meets every requirement of article 3269, R. C. S. 1925, except it is held to be insufficient to describe the land sought to be condemned.

We think that the petition described the land and easement sought to be taken or condemned with sufficient certainty to confer jurisdiction. It clearly and definitely fixes and establishes the center line of the intended power line, and with the aid of the map attached thereto, and made a part thereof, locates the structures along said line, on either side thereof, giving their position on the

ground, height, width, and every other description with sufficient detail to show the kind and character of easement so far as the actual ground occupied by the line, and crossed by it, is concerned, including its poles, cross-arms, wires, etc., from point of entrance to point of exit. G. C.·& S. F. Ry. Co. v. S. W. Tel. & Tel. Co., 18 Tex. Civ. App. 500, 45 S. W. 151; Ft. Worth & R. G. Ry. Co. v. S. W. Tel. & Tel. Co., 96 Tex. 160, 71 S. W. 270, 271, 60 L. R. A. 145; Mobile & O. R. Co. v. Postal Tel. Co., 120 Ala. 21, 24 So. 408; S. C. & G. R. Co. v. Am. Tel. & Tel. Co., 65 S. C. 459, 43 S. E. 970; Jones et al. v. Indiana Power Co., 192 Ind. 67, 135 N. E. 332; Western Union Tel. Co. v. L. & N. R. Co., 270 Ill. 399, 110. N. E. 583, Ann. Cas. 1917B, 670.

The petition also describes the entire tract and contains an allegation to the effect "that no growth or obstruction is to be permitted within such proximity to said line as to endanger the same by fire, storm or otherwise, or to cause the same to become dangerous in anywise to life or property, and for that purpose and reason it will be necessary to remove and thereby prevent the growth of such trees, limbs, or branches as·may in any way or to any extent endanger the same or cause the same to become dangerous by further growth or otherwise."

The Court of Civil Appeals holds in effect that this entire strip is attempted to be condemned, and that the clause is too indefinite to describe the land affected.

■ We think that the effect of the petition is to define the land actually taken, and to allege certain matters with reference to adjoining land not taken, and that in assessing the damages the commissioners had the right to ascertain the effect or damages sustained to the land not taken, and in doing this they necessarily had the right to hear evidence as to how close trees, branches, houses, etc., could be allowed on the land adjoining. The owners of the land by their answer alleged this to be a strip 50 feet wide on either side the center line. The electric company acquiesces in this allegation as to width, and, so far as this question is concerned, the record shows neither party is complaining. In this condition of the record we think the pleadings of the condemnor, together with the answer of the owners and the evidence, sufficient for the trial court to define the land on either said of the right of way on which trees, etc., cannot be allowed, not as land taken, but as land damaged. Bryant et al. v. Kansas City et al., 209 Mo. App. 210, 232 S. W. 1080 (K. C. Ct. of App.) and authorities there cited. In other words, when the county court has once obtained jurisdiction to condemn the right of way described, it had ample power and jurisdiction to hear evidence and adjudicate and settle all matters in dispute between the parties, both as to the actual land condemned, and inciden-

tal damages done to adjoining land. Gulf Coast Irrigation Co. v. Gary (Tex. Com. App.) 14 S.W.(2d) 266, Id. (Com. App.) 17 S.W.(2d) 774.

■ We wish to remark here that the landowners contend that the entire 100-foot zone is taken, and that the county court had jurisdiction to hear and determine the matter because they defined the zone in the answer. We hold as a matter of law that the entire 100-foot zone in which houses, trees, etc., are not allowed is, not taken, but that the fact that it will be dangerous for houses, trees, etc., to occupy such land is a matter to be considered by the trial tribunal in assessing incidental damages to land not actually taken. Bryant v. Kansas City, supra.

■■ We further hold that, when permanent damages are allowed and paid on account of the Electric Company line being so inherently dangerous that structures, houses, trees, etc., cannot be allowed within a zone 50 feet wide on either side thereof, then the power to prevent same becomes a right in favor of the electric company in the nature of a covenant running with the land. In other words, when the trial court finds that it will be dangerous to life or property to allow houses, trees, etc., in a defined zone on either side the line, and assess permanent damages therefor to adequately compensate him for the restrictions to the land within a defined zone, and the electric company pays the damages so assessed, then it is entitled to enjoy the thing it has paid for, and this right can be enforced in the nature of a covenant running with the land. We are further of the opinion that, if the petition for condemnation filed by the electric company had not mentioned the fact that there was a strip on either side the line in which houses, trees, etc., would be dangerous on account of the electric line, still the petition here would have been sufficient to confer jurisdiction on the county judge to appoint commissioners for the condemnation of the line of construction, and the owner of the land would have had a perfect right to plead the zone, and the fact that structures, trees, etc., could not be permitted therein without endangering life and property as an element of damages to the land not actually taken. Therefore, when the owner of the land in this case defined the zone of danger, as an element of damages to the land not taken, the commissioners and the county court on appeal had ample jurisdiction to adjudicate the issues so made and ascertain and assess the damages.

An examination of the charge of the court and the verdict of the jury and the judgment discloses that the jury found that the entire 100-foot zone was actually condemned and taken. This so affects the entire verdict and judgment that the case will have to stand reversed and remanded.

We therefore recommend that the judgment

of the Court of Civil Appeals reversing and remanding this cause be affirmed, but that on another trial in the county court that court be governed by this opinion.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.