SOUTHWESTERN GAS & ELECTRIC CO.
V. ANDERSON et ux.

No. 5907.

Court of Civil Appeals of Texas. Amarillo.
Nov. 29, 1948.

Rehearing Denied Jan. 3, 1949.

George Pendergast, of Marshall, for appellant.

Clayton W. Feild, Jr., of Marshall, for appellees.

PITTS, Chief Justice.

This was a condemnation proceeding filed by appellant, Southwestern Gas & Electric Company, a corporation, seeking to condemn an easement over and across 434 acres of land situated in Harrison County, Texas, and owned by appellees, J. B. Anderson and wife, Leola Anderson, for the purpose of constructing thereon an electric transmission line. An award of $337 was made appellees by the condemnation commissioners, from which award appellees appealed, filed their objections thereto and the case was tried de novo with the aid of a jury in the County Court.

It was agreed between the parties in the trial court that all condemnation proceedings were regular as to form, that appellant had the right of condemnation and the only issue to be determined by the trial court was the proper amount of damages to be assessed against appellant and in favor of appellees by reason of the condemnation of the easement for the purpose stated. Appellees assumed the burden of proof and

opened and closed in the trial. The electric transmission line had been built at the time of the trial. In response to special issues submitted to it, the jury awarded damages in the sum of $2559 against appellant and for appellees and judgment was rendered accordingly, from which an appeal was perfected to the Sixth Supreme Judicial District of Texas and the case was transferred to this court by the Supreme Court.

Appellant predicates its appeal upon three points of error and presents them all together. Appellant complains in effect that the amount of damages awarded by the jury was excessive, not supported by the evidence and was returned as a result of corruption, prejudice or passion on the part of the jury, all of which complaints are resisted by appellees.

Appellant states that its complaints are being presented "on two separate theories, the first being that the trial court has improperly and without authority of law permitted the defendants (appellees) to recover for a 100 foot strip across their land when no strip was taken." Under the record presented to us this theory of appellant's complaints was not presented to the trial court. Rule 418, Section (b), Texas Rules of Civil Procedure, provides that appellant's points upon which the appeal is predicated must be germane to one or more assignments of error. Rule 324 provides that a motion for a new trial must be filed in the trial court in a jury case such as this as a prerequisite for appealing. Rule 374 provides that the complaints set out in a motion for a new trial shall constitute the assignments of error on appeal. It further provides that a ground for error not distinctly set forth in a motion for a new trial is waived. Appellant presented to the trial court its motion for a new trial and the same was heard and overruled. But nowhere did appellant complain to the trial court in its said motion or otherwise, insofar as the record reveals, about its first theory hereinabove presented. However, because of our liberal construction of the rules, we shall pass on appellant's complaints presented in its first theory.

In support of its complaints presented in its first theory, appellant cites the cases of Texas Electric Service Co. v. Perkins, Tex. Com.App., 23 S.W.2d 320 and Texas Electric Service Co. v. Willard, Tex.Civ.App., 26 S.W.2d 338. It will be observed that in both of the said cases the land owners pleaded that the Electric Company was seeking to take from them the right of way for an easement and thereby deprive the land owners of the use and dominion of the strip of land a 100 feet wide in each instance and the land owners contended in each case that such was the purpose of the Electric Company. It will be observed that the court in the opinion handed down in the Willard case quoted from the opinion in the Perkins case as follows [23 S.W.2d 324]:

"An examination of the charge of the court and the verdict of the jury and the judgment discloses that the jury found that the entire 100-foot zone was actually condemned and taken. This so affects the entire verdict and judgment that the case will have to stand reversed and remanded."

These cases having similar factual situations, the court in the Willard case followed the rules of law discussed at length in the Perkins case and we think both cases were properly reversed and remanded because of the issues therein joined by the parties as reflected by the quotation hereinabove given.

However, we have no such pleadings in the instant case as were presented in the Perkins and Willard cases and no such issues were here joined by the parties. In this case the pleadings upon which the judgment was based were furnished in the main by appellant and not by the land owners. In its pleadings appellant described the land, alleged appellees owned it, further alleged its desire for an easement, designated the location of the easement across the land and described the nature of the structure or the material to be used in building the transmission line across the said land. Appellant further alleged that it would necessarily have to cut and clear the timber away from the right of way for 50 feet on each side of the said line, making the total width of the right of way 100 feet across appellees' land. It further alleged that the said right of way would remain

the property of appellees and that appellant sought only the right to enter upon the said land for the purpose of constructing, patrolling and maintaining its transmission line. Appellees filed no pleadings other than ten lines objecting to the award of the sum of $337 made to them by the commissioners as damages as a result of the condemnation proceedings instituted by appellant.

The trial court submitted four special issues to the jury without any objections being made to the same by either party. It first asked for the market value of the strip of land covered by the easement for the electric line described by appellant's pleadings immediately before the said line was built. It then asked in the second special issue for the market value of the said strip of land, "taking into consideration the use, if any, which defendants (appellees) may make of the said strip of land" after the easement for the electric lines had been acquired by appellant. In connection with the second special issue the trial court gave the following instructions:

"You are instructed that in connection with Question Number Two that the phrase 'uses, if any, which defendants may make of the land inquired about in Question Number One' is meant any use of said land by the defendants which is not inconsistent with and does not interfere with the use of said land for the use and purposes for which the Southwestern Gas & Electric Company has acquired said easement.

"You are further instructed in connection with Question Number Two that the Southwestern Gas & Electric Company has no right to fence the whole or any part of the land covered by the right-of-way easement. But the landowners may fence along the boundaries of said strip of land or any part of it, but are not bound to do so."

The jury's answer to the first special issue was $630.50 and its answer to the second special issue was $194, a difference of $436.50.

In order to determine the incidental damages, if any, done to the remainder of appellees' said tract of land, the trial court inquired in special issues numbers 3 and 4 about the market value of the said land be-

fore and after the easement had been acquired by appellant for the building of the electric line. The jury's answer to special issue number 3 was that the value of the said land before the easement was acquired was $27,592.50 and its answer to special issue number 4 valued the land after the easement was acquired at $25,470, a difference of $2122.50, thus making the total damages found to be the sum of $2559.

Appellant complains that appellees examined the witnesses on the theory that appellant was actually trying to take a strip of land a 100 feet wide across appellees' land. But the record does not bear out such a contention. It appears that the witnesses understood that only an easement was being sought by appellees and they gave testimony accordingly. It is our opinion that the procedure of the trial court in this case was not subject to the complaints and criticisms made by appellant in its first theory presented as heretofore stated and that there clearly appears a distinction between the issues presented in this case and those issues presented in the Perkins and Willard cases heretofore referred to by us and relied on by appellant. It is our opinion further that the issues in this case were properly joined and were properly presented to the jury by the trial court. Our position in this matter is supported by the case of Aycock v. Houston Lighting & Power Co., Tex.Civ.App., 175 S.W.2d 710, and other authorities there cited. In the Aycock case there was an easement 80 feet wide procured for the purpose of erecting, maintaining and servicing the power lines and in addition thereto an easement was procured 50 feet wide on each side of the strip 80 feet wide in order that the Lighting and Power Company may keep the trees and limbs cut and trimmed on the said strips 50 feet wide on each side of the electric lines built along the strip 80 feet wide. The elements of damages were determined in that case in the same manner that they were determined in this case. The amount of damages awarded in the Aycock case was not as large as the sum awarded by the jury in this case. But in the Aycock case there was testimony to the effect that the land in question was suitable for subdivision purposes and the availabil-

ity of electricity to a subdivision of the land would be beneficial and increase the value of the land, all of which testimony was available for the consideration of the jury in that case. No such advantages or increased values of the land by reason of the electric lines were presented in this case.

In its second theory presented by appellant it complains that the amount of damages awarded appellees by the jury is grossly excessive and not supported by the evidence.

■ Two Harrison County land owners and appellee, J. B. Anderson, testified without objections by appellant as to the market values of the land in question, after qualifying as witnesses to testify as to such market values. Thereafter appellees called as their next witness another Harrison County land owner when appellant, through its counsel, stated that it would agree that appellees' next three witnesses, being farmers who resided in Harrison County, Texas, would testify substantially the same as the other witnesses previously heard. After such statement was made, no testimony was given by the said three witnesses but the trial court and the jury were justified in assuming that their testimony would have been the same as that previously heard. Thereafter two real estate men who lived in Harrison County testified as to the market values of the land, after qualifying as witnesses to testify as to such market values. One testified for appellees and the other for appellant. Appellant did not object to any of the testimony given by appellees' witnesses as to the market values of the land in question. Neither did appellant cross-examine any of appellees' witnesses on the testimony given by them as to their qualifications as witnesses to testify as to such market values of the land in question. It was agreed by the parties that a strip of land 100 feet wide across appellees' land where the easement was sought would be 9.7 acres. The record reveals that the electric lines in question crossed appellees' land for a distance of 4200 feet. There were six poll fixtures on appellees' land placed about 600 feet apart. A poll fixture consists of two poles 50 or 60 feet long put 8 feet in the ground 14 feet apart, set side by side, connected near the top with a cross-arm 29 feet long. The electric wires are strung from one cross-arm to another and the wires are a minimum of 22 feet above the ground between the spans. The record further reveals that the line crossed some timber land and some cultivated land of appellees. It further revealed that appellant would necessarily have to cut about 2000 feet of commercial timber 100 feet wide on appellees' land and thereafter keep the timber cut off of the easement acquired. The value of the timber cut off of the land to erect the line was about $15 to $20 per thousand.

All of the witnesses were acquainted with the land in question and most of them testified that appellees' said land was worth $100 per acre where the easement was sought and before such easement was acquired and they further testified it was worth from $10 to $20 per acre after the easement was acquired and the high-line was built on the land. Most of the witnesses testified that the remainder of the land was worth $100 per acre before an easement for a high-line was acquired by appellant and was worth from $5.00 to $6.00 per acre less after the easement was acquired and the high-line built. One witness testified that appellees' tract of land was damaged 5% by reason of the procuring of an easement for the building of a high-line across it. Another witness who testified for appellant said the value of the land where the easement was sought was worth $50 per acre or that the whole strip covered by the easement was worth the total sum of $450 before the easement was acquired and was worth $100 after it was acquired. He further testified that the value of the remainder of the land was not any less by reason of the easement and the building of the high-line. On cross-examination such witness testified that he was one of the commissioners appointed by the County Judge who assessed the damages for the easement and made the award of $350 to appellees.

■ Appellant complains that the witnesses were confused in giving their testimony and that the jury was confused in its attempt to answer the special issues but the record does not reveal any indication of confusion either by the witnesses or by the

jury. Appellant further contends that most of appellees' witnesses testified that the incidental damages done to the remaining land of appellees not used as a part of the easement acquired was $5 per acre or 5% of its former value and that such a basis for damages, if any, was wrong and improper since damages, if any, to the tract of land should be established as a whole and not damages by the acre. We overrule such contention since the record reveals that no objections were made by appellant to such testimony when it was given and since the issues submitted to the jury asked and the amount of damages found were based on the damages done as a whole to the remainder of the land. We think the jury correctly found the measure of damages to be the market value of the land before the easement was acquired and the market value afterwards. Texas Electric Service Co. v. Wells, Tex.Civ.App., 8 S.W. 2d 705, and State v. Davis, Tex.Civ.App., 140 S.W.2d 861.

■■ In considering appellant's charges that the damages awarded by the jury were excessive because there was no evidence to support the findings, we must exclude all testimony in conflict with the findings and consider only that most favorable to the findings upon which the judgment was based. Reeves v. City of Dallas, Tex.Civ. App., 195 S.W.2d 575. When such is done there is evidence of probative force to support a larger verdict than that found by the jury. Then certainly there is evidence of probative force to support the jury's verdict. Appellees assumed the burden of establishing the amount of damages done to their land by reason of the easement acquired by appellant. After seeing the witnesses and hearing all the evidence, the jury fixed the market value of the land covered by the easement before such was acquired as well as thereafter. It likewise fixed the incidental damages done to the remainder of the land by fixing its market value before and after the easement was acquired. All findings were well within the market values fixed by the testimony of the witnesses, none of whom were impeached and most of them seemed to be disinterested witnesses. It is our opinion therefore that the jury's findings were binding upon the trial court which correctly rendered judgment based upon such findings. It is likewise our opinion that the jury's findings that resulted in the trial court's judgment are binding upon this court. Russell Coleman Oil Mill v. San Antonio, U. & G. R. Co., Tex.Civ.App., 37 S.W.2d 165, and Roberts v. County of Robertson, Tex.Civ.App., 48 S.W.2d 737.

We have failed to find any grounds reflected by the record for charging that the verdict of the jury was the result of corruption, prejudice or passion on the part of the jury.

A careful examination of the record and briefs reveals no reversible error. Appellant's points are therefore overruled and the judgment of the trial court is affirmed.