CITY OF HOUSTON, Appellant,

v.

A. B. COLLINS, Appellee.

No. 13178.

Court of Civil Appeals of Texas.

Houston.

Feb. 6, 1958.

Rehearing Denied March 6, 1958.

Geo. D. Neal, City Atty., Richard H. Burks, Acting City Atty., Charles A. Easterling, Senior Asst. City Atty., Houston, for appellant.

Spiner, Pritchard & Thompson, Clark G. Thompson, Houston, for appellee.

WOODRUFF, Justice.

This is an appeal by the City of Houston from a judgment entered April 29, 1957, in a condemnation suit based upon the verdict of the jury awarding compensation and damages to the appellee, A. B. Collins, in the sum of $7,200 by reason of the taking for right of way purposes of Lot 11 and the resulting damages to Lot 12, Block 73, of Belt Junction City, an addition to the City of Houston. The award of the commissioners filed July 12, 1954, awarded appellee a total of $3,360, which sum was tendered by appellant into the registry of the trial court. Appellee in due time objected to the award, and the trial de novo before the County Court at Law commenced on April 15, 1957.

The condemnation was occasioned by the widening of Irvington Boulevard from 60 feet to 100 feet between Frisco and Caplan Streets in the City of Houston. Irvington Boulevard runs in a northerly and southerly direction and the additional right of way was acquired to the west thereof. Appellee owned the tract on the northwest corner of Irvington Boulevard at its intersection with Melbourne Street, composed of Lots 11 and 12 of Block 73, Belt Junction City Addition. As originally platted each lot was 40 feet wide and 120 feet deep and faced south on Melbourne. Lot 12 was the inside lot and Lot 11 was on the corner. Irvington Boulevard ran along the east side of Lot 11 for a distance of 120 feet. The two lots formed a tract 80 feet by 120 feet at the northwest corner of the intersection of the two streets.

The case was tried to a jury and there being no issues except those involving the compensation to which appellee was entitled for the taking of Lot 11 and the resulting damages accruing to Lot 12 by reason of such taking, only three special issues were submitted to the jury which, together with the answers given by the jury in response thereto, were as follows:

Special Issue No. 1
"From a preponderance of the evidence what do you find to have been the market value of Lot 11, considered as severed land, immediately before

the taking of such land on July 12, 1954?

"Answer in dollars and cents."

(To which the jury answered: "$4,320.00")

Special Issue No. 2

"From a preponderance of the evidence what do you find was the market value of Lot 12, immediately before Lot 11 was taken for street purposes?

"Answer in dollars and cents."

(To which the jury answered: "$4,320.00")

Special Issue No. 3

"Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendant in common with the community generally and not peculiar to him and connected with his ownership, use and enjoyment of Lot 12, and taking into consideration the uses to which Lot 11 is to be subjected, what do you find from a preponderance of the evidence was the market value of Lot 12 immediately after the taking of Lot 11 for street purposes?

"Answer in dollars and cents."

(To which the jury answered: "$1,440.00")

The court, on April 29, 1957, entered judgment on the verdict awarding appellee a recovery of $7,200, but after crediting thereon the amount which appellant had tendered into the registry of the court together with an item of costs which had been taxed against appellee, the net recovery amounted to $3,600. From this judgment the City of Houston perfected its appeal.

■ It is undisputed that all of Lot 11 was being condemned for the widening of Irvington Boulevard from 60 feet to 100 feet. Mention is made of this fact in view of appellant's many references to the taking of Lot 11 as "the easement taken." Of course, the law is well settled that if the taking of an easement deprives the landowner of the beneficial use of the condemned property, he is entitled to the recovery of the market value of the fee as the measure of damages sustained. Thompson v. Janes, 151 Tex. 495, 251 S.W.2d 953, 956. In this case the following excerpt from 18 Amer.Jur., Eminent Domain, Section 251, was quoted with approval:

"While it is no doubt true that ordinarily a city or town or a railroad company in acquiring land for a highway or railroad is entitled to acquire by condemnation proceedings only an easement over the land, and that the fee thereof remains in the owner, yet in most condemnation cases for highways or railroads this distinction, as far as it enters into a determination of the damages to be assessed for the right of way acquired thereby, has no practical application. Usually in such cases there is no substantial difference in value between the easement and the fee, of which the law will take notice. Hence, in ordinary cases, where condemnation for a right of way is sought, evidence is permitted to show, as the damages sustained, the full value of the land taken, upon the theory that the easement will be perpetual; that the right of way acquired, though technically an easement, will be permanent in its nature, and the possibility of abandonment by nonuser so remote and improbable as not to be taken into consideration; that the exercise of the right will require practically the exclusive use of the surface; and that any interest which might be reserved to the owner in the fee would only be a nominal one and of no value. In such circumstances, as there can be no substantial determinative value in the fee apart from the easement, the law will not consider them separately, but will require the condemning corporation to pay the value of the fee as the measure of the damages sustained."

Appellant contends by its first point that the trial court erred in entering judgment

on the verdict and in not setting the verdict aside because it is not supported by and is contrary to the preponderance of the credible testimony adduced to show the value of the easement taken covering Lot 11 considered as severed land and that the trial court should have set aside such verdict.

A discussion of this point requires a terse statement of the testimony touching values given by the witnesses.

Appellee Collins and his witness, Louis C. Carr, a real estate broker, testified at length. Mr. Collins stated that he had purchased the lots in 1943 or 1944 to use as a sporting goods store. He gave their location as being on the northwest corner of the intersection of Irvington Boulevard and Melbourne Street, facing 120 feet on Irvington and 80 feet on Melbourne. Lot 11, so he testified, was being taken, leaving Lot 12. Each lot was 40 feet by 120 feet, and since the taking of Lot 11 he had attempted to purchase a similar site of two lots within the same area, but had been unable to find one. From his investigation and ownership of the property in question he stated he was able to put a value on his property, and it was his opinion that Lot 11 was reasonably worth $10,000; that Lot 12 had been damaged by the taking of Lot 11; and that in regard to the value of Lot 12 after the taking of Lot 11 he did not know, that was hard to say.

He further testified that from his investigation along Irvington Boulevard he thought the two lots together were worth around $15,000 and that the value of Lot 12 after Lot 11 had been taken would be damaged by 50%, so he would say $5,000 for Lot 12, the inside lot.

On cross-examination, appellee testified his opinion that the 40 foot by 120 foot corner lot was worth $10,000 was based on what he learned from shopping around and trying to buy another piece of property similar to this. He reiterated that he thought Lot 11 was worth $10,000 and that the two lots together were worth $15,000.

In response to a question propounded by counsel for appellant asking him for his opinion as to what Lot 12 was worth, he answered that Lot 12 in his opinion was damaged 50%, so he would say $5,000 because he did not think he could get $5,000 for one 40 foot lot.

A number of photographs of the lots taken from various angles were offered in evidence, which gave the jury a definite picture of the intersection and the physical appearance of the lots involved.

The witness, Louis C. Carr, testified that he had been in the real estate business eleven years handling commercial property, including negotiating sales, appraisals, and management. After stating that he had investigated and appraised Lots 11 and 12, Block 73, Belt City Addition, he testified that he had valued Lot 11 separately, but initially he had appraised the combined property composed of Lots 11 and 12 and then "split it." He valued Lot 11 fronting 120 feet on Irvington Boulevard, containing 4,800 square feet, at $1.25 per square foot, or $6,000. He considered that Lot 12, the inside lot, was damaged by the taking of Lot 11. His appraisal, so he said, was based upon the combined ownership of Lots 11 and 12. Appraising the one lot and assuming that it was all that was owned, he stated that he would not evaluate Lot 11 at $6,000; that prior to the taking of Lot 11 he said Lot 12 as a part of the two lots would have a value of $6,000 before the condemnation. After the condemnation of Lot 11, leaving Lot 12 by itself, in his opinion, there would be a depreciation in its value to the extent of about 80%. He would not look at it as a lot 40 feet by 120 feet, but as commercial property 120 feet by 40 feet, and with a depth of only 40 feet its value would be reduced about 80%. Later, on cross-examination, he explained his opinion by pointing out that as a lot only

40 feet deep its use for commercial purposes would be extremely limited in view of the need for off-street parking. Therefore, so he stated, Lot 12 after the taking of Lot 11 was only worth approximately $1,200, in his opinion.

When he was asked on cross-examination as of what date he was testifying that Lot 11 was worth $6,000, he replied that it was worth about the same for two or three years before the date of the trial, allowing for the change in the dollar value. He stated that he had been hired about April 1, 1957, to make the appraisal and that while he did not recall having his attention directed particularly to this property before his appraisal, he traveled the commercial streets of Houston checking the demand and that it was the same June 12, 1954, as it was at the time of the trial. He testified that he would say that the physical condition of the property was about the same, it being vacant property. Mr. Carr further testified that he based his opinion on his experience in handling commercial property for the past several years, comparing it with other property of similar size and the same relative location and an examination of the neighborhood and the adjacent improvements.

Appellant offered four real estate appraisers, who testified to their opinions of the market value of Lots 11 and 12. The first witness, Otto Eversberg, testified that in his opinion Lot 11 as severed land had a market value of 60 cents per square foot, or $2,880 for 4,800 square feet. He further testified that the adjoining lot 40 by 120 feet he "figured would be damaged by reason of decrease of the area"; that before the taking as of July 12, 1954, in his opinion Lot 12 had a market value of 60 cents per square foot, or $2,880, and that immediately after the taking "due to the fact that they left him a less area" he gave appellee "damage" of $720 to Lot 12. In making his appraisal he said he looked at the property and talked to the neighbors. Excluding one improved property, he had not found any sales on Irvington Boulevard in 1953 or 1954 at or under 60 cents a square foot. Mr. Eversberg also stated that he valued the lot at at $2,880 for residential purposes only, not as business property.

Appellant's next witness, Horace E. Pounds, testified he had appraised Lot 11 "considered as severed land" on July 12, 1954, at $2,400. He also estimated the value of Lot 12 before the taking at 50 cents per square foot, or $2,400, and that it was "damaged" after Lot 11 was severed by 30 cents per square foot, or $1,440. Appellant also showed by the witness Pounds that 19 blocks closer to the heart of the city a lot fronting 50 feet on Irvington Boulevard by 100 feet deep was sold July 20, 1953, for $4,000, or 73 cents per square foot.

H. F. Finley, appellant's next witness, testified that it was his opinion as of July 12, 1954, the value of Lot 11 as severed property was $3,000 and that Lot 12, before the taking of Lot 11, would also be worth the same amount. However, Lot 12 would be worth $2,000, or "damaged" $1,-000 after the taking of Lot 11. He also testified, over appellee's objection, to having purchased a lot on March 12, 1954, facing Irvington Boulevard 70 feet by 100 feet five blocks north of the Collins lots for $3,500, and that in March of 1957 he sold it for $6,000, or 54 cents per square foot. Another sale about four blocks north of the Collins lots was made, so he said, of property comparable to the Collins tract on Irvington Boulevard in January, 1954, for $5,000, or 42 cents per square foot.

Appellant called, as its fourth real estate appraiser, Albert W. Westerhaus. He stated that the market value of Lot 11 as severed land on July 12, 1954, was, in his opinion, $2,880 and that one ownership of Lots 11 and 12 as a unit would definitely be an advantage, and that the taking of Lot 11 would damage Lot 12. He stated that the market value of Lot 12 before the taking of Lot 11 was $1,920 and immediately thereafter $1,400, so that Lot 12 would be damaged $520 by the taking. He placed

a total value of $4,800 on the two lots before Lot 11 was taken.

■ Appellant contends that appellee's proof is insufficient "because of the failure of appellee's witness Carr and appellee to appraise the property properly and give their opinion as to the value of Lot 11 *considered as severed land*." Although appellee and Carr were not asked for and, therefore, did not categorically testify to their opinions of the value of Lot 11 "as severed land," they did give their opinions regarding the value of the two lots. Moreover, each testified to his opinion of the value of each lot separately and also what the value of Lot 12 would be after the taking of Lot 11. Appellant's counsel cross-examined both of them at length and had them reiterate most of their direct testimony concerning their opinions of value. He, too, failed to ask them what value they placed on Lot 11 as severed land.

Appellant has cited State v. Carpenter, Tex.Com.App., 126 Tex. 604, 89 S.W.2d 194, in support of his contention. The special issues in this case were framed in the exact form suggested in that case. As we see it, that case laid down the law on the framing of the special issues to be submitted to the jury in cases where there is a taking of a part of a tract with resulting damages to the balance, so that there can be no double recovery of damages to the remaining tract. We cannot, however, find any basis in that case for the contention that the court intended to place the landowner in a verbal strait-jacket by having to refer to the land being taken as severed land whenever he referrd to it in interrogating a witness about its value.

Appellant also cites Wallace v. Van Zandt County, Tex.Civ.App., 264 S.W.2d 202, 204, no writ history. That was an appeal by the landowner from a judgment entered by the trial court in a condemnation suit, tried without a jury. The trial court's judgment was reversed and the cause remanded on two grounds: (1) because the trial court considered the award of the special commissioners, and (2) because there being a partial taking of a tract of land, there was no evidence offered to show the value of the whole tract exclusive of the part taken. That ruling has no application here inasmuch as the whole tract here was composed of only Lots 11 and 12. Each time a witness testified in the instant case regarding his opinion of the market value of Lot 12 before Lot 11 was taken he gave evidence "of the value before the taking of the whole tract exclusive of the part taken."

It is true that when appellant's counsel interrogated its witnesses regarding their opinion of the value of Lot 11, as we have heretofore shown, he framed his question so as to inquire about its value as severed land. However, he did not object to the testimony given by either the appellee or the witness Carr because they did not confine their opinions relative to the value of Lot 11 as severed land. Moreover, the transcript fails to show that before going to the jury on the special issues appellant either moved to strike or in anywise restrict the jury's consideration of the testimony of these witnesses. Nevertheless, we believe that the holding in the case of State v. Davis, Tex.Civ.App., 140 S.W. 2d 861, 864, no writ history, applies here. In ruling on a similar situation it was said:

"The State urges three propositions as against the first Special Issue and its answer. The issue reads: 'From a preponderance of the evidence, what do you find was the market value of the strip of land condemned by the State for highway purposes at the time it was condemned, considered as severed land?' The answer was, '$37.50 per acre.'

"It is contended by second and third propositions, which we shall treat as one, that the issue was improper because there was no evidence upon which to base an answer thereto, since none of the evidence was confined to its value as severed land. It is un-

questionably true that in arriving at the value of the strip appropriated, it must be determined independently of the value of the remainder which may have a greater or lesser value per acre for obvious reasons; * * *

"We see no such error presented here as to require a reversal of the case. In the first place, no objection was made by the State to the evidence of values of the condemned strip when offered, and no request was made that the testimony be limited to a value as if severed from the remainder. In the next place, the fact that the jury fixed the market value of the strip taken at $37.-50 per acre the same as some of the witnesses gave as the value per acre of the whole tract, does not mean that the verdict necessarily reflects a failure to consider the values as severed land, as the issue inquired. The presumption prevails that the jury observed the court's charge unless the contrary appears. * * *".

Appellant's first point is overruled.

By its second point, appellant says that the trial court erred in entering judgment for appellee because it is not supported by credible evidence or findings of the jury as to damage sustained by the remaining Lot 12 after the taking of the easement across Lot 11.

As succinctly stated in its brief, "It is the contention of the Appellant that the Appellee wholly failed to meet his burden of proof that Lot 12 was damaged in any amount by the severance of an easement across Lot 11 by the Appellant for street purposes." .

Appellant, in urging this point, refers to substantially the same testimony pertaining to Lot 12 which was considered in connection with the presentation of Point No. 1. In fact, basically they are one and the same contention and what has heretofore been said concerning the sufficiency of appellee's proof of market value relating to

Lot 11 we consider equally applicable to the sufficiency of his evidence relative to the market value of Lot 12 both before and after the taking of Lot 11. Here, too, appellee relied upon his testimony and that of Louis Carr to make his proof. However, in connection with this point we believe an excerpt from the testimony of the appellee, A. B. Collins, which is taken from the cross-examination of appellant's counsel, is particularly significant and should be added to the résumé heretofore given. That portion of the cross-examination mentioned reads as follows:

"Q. Mr. Collins, will you turn and face the jury and tell them you think this lot 40 feet wide is worth $10,000? A. Yes, I truly do. I think it is worth $10,000, because I can't duplicate it for $10,000; I certainly do think it is worth $10,000.

"Q. Would you also tell them, Mr. Collins, you think the adjoining lot is worth $15,000? A. I say the two of them together are worth $15,000; the only way I can base it, what I can duplicate it for. I have a 40-foot lot and nobody wants it.

"Q. Let me understand your testimony again. Did you tell us that Lot 11 is worth $10,000? A. I think so, yes.

"Q. And that lot 12 in your opinion is worth how much? A. I would say it is damaged fifty percent; I say $5000 because I don't think I could get $5000 for one 40-foot lot.

"Q. In effect, you are telling us it is worth $10,000? A. Yes.

"Q. Then in your opinion, instead of $15,000 it is worth $20,000? A. Nobody can use a 40-foot lot."

It is true, as stated in Ready v. City of Marshall, Tex.Civ.App., 234 S.W.2d 104, 107, no writ history, that "some of the early authorities held that the burden of proving the value of property taken and

damages to other property of the landowner rested upon the condemner, but the courts have rejected that theory, and it now seems that the burden rests upon the landowner."

However, it is equally true that when it is contended that the damages awarded by a jury in a condemnation case are not supported by competent evidence to support such findings, we must exclude all testimony in conflict with the findings and consider only that most favorable to the findings upon which the judgment was based. Southwestern Gas & Electric Company v. Anderson, Tex.Civ.App., 217 S.W. 2d 47; Reeves v. City of Dallas, Tex.Civ. App., 195 S.W.2d 575, writ refused, n. r. e.

The rule has been clearly stated by this Court, speaking through the late Justice Cody, in City of Houston v. Schorr, 279 S.W.2d 957, 959, writ refused, n. r. e., in the following excerpt from that opinion which seems particularly applicable to this case:

"But the question here is whether after the trier of the facts had listened to the evidence and the witnesses and found that the property had been damaged to the extent of $1,250, there was sufficient evidence in the record to sustain such finding. The rule is well established that we must consider only the evidence most favorable to sustain the award. See Southwestern Gas & Electric Co. v. Anderson, Tex.Civ.App., 217 S.W.2d 47. The appellee qualified as an expert on real estate values in Houston. Without holding that it was necessary for appellee to be qualified as an expert to give an opinion as to the value of his lot immediately before and immediately after the condemnation, the fact remains that he did so qualify and gave it as his opinion that the property just before the condemnation was worth $9,500, and just afterwards, $3,500. There were other realtors who qualified as experts who gave testimony which amply justified the award of $1,250. It will not do to stigmatize these estimates of value as bald conclusions of the witness. All opinions of values depend for their acceptance probably more upon the faith the witness inspires rather than upon how well with reason he supports his conclusions. But be this as it may, the evidence was competent and if the values were not supported by good reasoning, they went to the weight and not the competence of the evidence. We must, therefore, hold that there was evidence to sustain the award."

In support of its contention under this point, appellant has cited Beaumont Gaslight Company v. Rutherford, Tex.Civ.App., 223 S.W. 245, no writ history; Tennessee Gas & Transmission Co. v. Zirjacks, Tex. Civ.App., 244 S.W.2d 837; Bell County v. Flint, Tex.Civ.App., 91 S.W. 329; International & G. N. Ry. Co. v. Fickey, 59 Tex. Civ.App., 133, 125 S.W. 327.

An examination of all of these cases fails to reflect any parallel between the nature of the testimony offered in them and that offered in this case. From the statement contained in San Antonio & A. P. Ry. Co. v. MacGregor, 2 Tex.Civ.App. 586, 22 S.W. 269, also cited by appellant, it is difficult to determine the exact character of the landowner's testimony, but nevertheless it was approved as tenable proof of value.

It should also be borne in mind that in condemnation suits the opinions of the landowner as to land values are admissible. City of Teague v. Stiles, Tex.Civ.App., 263 S.W.2d 623. This is in accord with the rule in the majority of the jurisdictions in this country. See also 16 Tex.Jur., Eminent Domain, Sec. 256; Jahr on Eminent Domain, Valuation and Procedure (1953), page 205; 32 C.J.S. Evidence § 545, pp. 288–305.

The witness Louis E. Carr also qualified as an expert on land values and gave his opinion on various values and other mat-

ters pertaining to the land, as set forth above.

■■ We believe that there was ample testimony before the jury to support the verdict and that in the final analysis appellant's contentions go only to the weight to be given the testimony and the credibility of the witnesses. The market value of the property was an issue of fact for the jury to determine from the witnesses' testimony and they, having seen and heard the witnesses, rendered their findings which in fact do not wholly support the contentions of either the appellant or appellee. We believe the verdict is amply supported by the evidence. Appellant's second point is overruled.

By Point No. 3 appellant contends that the trial court erred in permitting the witness Carr to testify to a sale of other property in the vicinity of appellee's land which was made in January, 1957, about two and one-half years after the taking of Lot 11.

Appellee points out, arguendo, that shortly before his tender of this testimony on rebuttal the appellant in attempting to prove a sale of another piece of property in October, 1950, had stated to the court that he did not feel that 3 years and 8 months before the date of taking was "too remote in this locality where the property is located" and upon obtaining a favorable ruling was thwarted in making this proof only when it developed that the property sold was not comparable because improvements were included in the sale.

■ Be that as it may, the question of the admissibility of the sale price of other comparable property in the same locality ordinarily involves those sales which have been made before the date of the taking. However, we see no reason why the same rule should not be applicable to sales subsequent to the taking as long as the price sought to be offered after the taking is not derived from the sale of any property which has been benefited by the project or improvement occasioning the taking. In fact,

it has been so held in Housing Authority of City of Dallas v. Shambry, Tex.Civ.App., 252 S.W.2d 963, writ refused, n. r. e. 152 Tex. 122, 255 S.W.2d 184; Housing Authority of City of Dallas v. Nealy, Tex.Civ. App., 252 S.W.2d 967.

■ The admissibility of such evidence involves a question which is not to be determined by any hard and fast general rule but rests largely in the discretion of the trial court. City of Houston v. Pillot, Tex. Civ.App. 73 S.W.2d 585, reversed on other grounds Tex.Com.App., 105 S.W.2d 870; Joyce v. Dallas County, Tex.Civ.App., 141 S.W.2d 745, no writ history; Cole v. City of Dallas, Tex.Civ.App., 229 S.W.2d 192, refused n. r. e.; Couch v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 292 S.W.2d 901, writ refused. We are unable to say that there was an abuse of discretion by the trial court in admitting the testimony in this case and, therefore, Point No. 3 is overruled.

In its fourth, fifth and sixth points, appellant assigns as error the action of the trial court in permitting the appellee's witness Carr to testify, over appellant's objection, to sales of various property in the vicinity of appellee's tract of land because he had no knowledge of the sales and had not seen the land and, therefore, could not have had sufficient knowledge of it to testify that it was comparable to that of appellee, and that he did not know that the sales were made of his own personal knowledge or the sale prices paid for the property, same having been based on hearsay testimony.

Testimony regarding the sale of comparable property was offered by appellee on rebuttal by the witness Carr. The first tract considered was located at 4801 Irvington Boulevard, on the northwest corner of its intersection with Hardy Street, which was sold in July, 1953, and was some 16 or 17 blocks south of the Collins tract located in the 6400 block of Irvington. It was 97 by 100 feet and the block book showed it un-

improved in 1953, although the witness could not say that he had gone out there and looked at it at the time. While comparably located, he stated that he thought this tract was in a slightly better area and that he would put a better valuation on it than on the Collins tract.

On voir dire examination it was shown that Carr had not represented either the buyer or the seller, and that he had gotten his information from the Court Review. An objection was then urged to the introduction of the sale price and, after a conference between the court and the attorneys, appellee qualified his tender of such evidence by stating to the court and jury that the testimony would be offered for the limited purpose of showing its "use" made by Carr in determining values and not for proving the actual transaction. The court then admitted the testimony for the limited purpose only, overruling appellant's objection to its being admitted for any purpose because it was hearsay and because there was a lack of similarity in the properties.

The witness then testified that the sale price was $20,500, or $2.11 per square foot.

He also testified to the sale of four adjoining lots located in the 4300 block on Irvington in January, 1957; two in one sale and the other two being sold separately, but all to the same party, C. R. B. Price. They were about 20 to 21 blocks south of the Collins lots, unimproved, and were comparable to appellee's lots, but not identical—being inside lots and in a slightly better area. The tender of this proof was also limited for the purposes of use made by Carr in determining values and not to prove the transactions. The witness stated that the two lots together sold for $10,000, or 83 cents per square foot, and that the sale price of the two lots sold separately was $7,500 each, or $1.25 per square foot. The testimony further showed they were 50 by 100 feet in size.

It should be observed here that appellant had shown by its witness, Horace Pounds, that a sale of a lot facing 50 feet on Irvington Boulevard by 110 feet deep, as reflected by the Deed Records of Harris County, 19 blocks closer to town than the Collins property, which would place it within one or two blocks of the 4300 block where the four lots are located, had been used by him, not exactly, but to help him determine what would be a fair price for the Collins property. The lot was sold in July, 1953, for $4,000, or 73 cents per square foot. He also testified that he thought the property was comparable "to a high degree."

Appellant also offered proof by its witness Finley that in March, 1954, he had purchased a second tract 70 by 100 feet facing on Irvington Boulevard, five blocks north of the Collins lots in an area he considered better for business than appellee's lots, for $3,500 and, over appellee's objection that it was not comparable property, he was permitted to testify that he sold it in March, 1957, for $6,000, or 54 cents per square foot.

■ Appellee asserts that Carr's testimony relative to the sales in which he testified was admissible without qualification in rebuttal to appellant's testimony of comparable sales although it was only tendered for the purpose of showing the use made thereof by Carr in determining values and not for proving the actual transaction. Consequently, so appellee contends, there was no error in the court's ruling, and, in the alternative, if there was error, it was harmless under the state of the testimony before the jury.

In support of its position, appellant cites only the case of Wichita Falls, R. & Fort Worth R. Co. v. Cooper, Tex.Civ.App., 235 S.W. 927, 929, no writ history. This involved the taking by the condemner for right of way purposes of a 100 foot strip containing 5.74 acres across the appellee's 160 acre tract. The land was not subdivided at the time of the taking although the

tract south of it, owned by a Mr. Davenport, had been subdivided into lots and, in holding that certain testimony regarding the asking price by the owner was inadmissible, the court said:

"* * * we think it was clearly improper for the witness to give as original evidence the statement of what Mr. Davenport told him or what he had heard was the asking price of the lots, or of the price Mr. Williams was willing to give for three acres of the Cooper land in an exchange of properties. It was clearly hearsay and misleading. * * *.

"We know of no case that has gone so far as to hold that as original evidence of market value the witness may state, as did the witness Brashier, the asking price of an individual owner of lots, especially when no evidence is offered showing the open market sales of lots at the prices asked. * * *."

It is apparent that the court held the testimony to be incompetent because the witness only related what the owner's asking price was for the land and what someone was willing to give in an exchange of properties.

We fail to see the application of that case to the facts here.

In view of the limitation placed upon the tender of Carr's testimony regarding the sale price of these lots into evidence, we must assume that the jury understoood that they were not to consider it as evidence of the prices for which these properties sold but only as testimony, we take it, as to investigation, the witness Carr made in connection with evaluating the property in controversy.

 We believe that this sufficiently disposes of this point. However, if it can be contended that the jury's consideration of the evidence was not so limited, we do not believe that there would have been error in admitting the testimony before the jury. Practically all jurisdictions permit sales data of comparable property to be offered in connection with expert witnesses' testimony of value of real estate which is the subject of litigation. In most states, it may be offered on the direct examination of the witness. Only five or six states (see Jahr on Eminent Domain, Valuation and Procedure, Sec. 142, p. 218) confine the introduction of such sales to cross-examination. We believe that the procedure of the majority has been followed in Texas in the past, and certainly it was in this case. Neither party contends otherwise, but appellant asserts that the testimony of Louis C. Carr, having been based on information obtained from the Court Review, was hearsay for all purposes. In support of this position, it cites the case of United States v. Katz, 1 Cir., 213 F.2d 799, 800. In holding that such testimony is hearsay, the court said:

"Since these are all matters of which persons with only hearsay knowledge of a sale can be expected to know little or nothing, whereas those with firsthand knowledge, such as a party to the sale itself or the broker or agent who affected it, can be expected to know at least something, we think the hearsay rule should be adhered to in the interest of justice to both parties. Nor does information as to prices gleaned from the recitations of consideration in deeds in the Registry, or revenue stamps affixed thereto, give any real help in arriving at value. More often than not the true consideration paid is not stated in a deed, there appearing only a formal statement of consideration."

If this rule is followed, it would also strike down all of appellant's testimony of comparable sales, except the two instances to which its witness Finley testified wherein he was a party.

We believe, however, that the better rule is that laid down in United States v. 5139.5

Acres of Land, in Aiken and Barnwell Counties, S. C., Tract No. D–308, 4 Cir., 200 F.2d 659, 662, wherein it was said:

"The rule is well settled in most jurisdictions that ordinarily 'the value of lands, or interests in realty, at a particular time, may be proved by evidence of voluntary sales of similar property in the vicinity, made at or about the same time' * * *. And, although there is some conflict in the decisions, we think the better rule is that where the opinion of an expert witness is based in part on such sales, he should be permitted to give the details of the sales upon which he bases the opinion, although the facts so stated do not become independent evidence. * * * Cases can readily be imagined where the court in its discretion should exclude evidence of this sort because of remoteness in time of the sales or because the property sold was not similar to that being valued, but it should ordinarily not be excluded under the hearsay or best evidence rules. If the expert has made careful inquiry into the facts, he should be allowed to give them as the basis of the opinion he has expressed. If he had not made careful inquiry, this will be developed on cross examination and will weaken or destroy the value of the opinion. Ordinarily evidence as to facts of this sort given by an expert as the basis of his opinion as to value comes with a sufficient guaranty of trustworthiness to justify the relaxation of the hearsay and best evidence rules."

Our conclusion in this regard, we believe, is sustained by the main and concurring opinions rendered in Cole v. City of Dallas, Tex.Civ.App., 229 S.W.2d 192, 197, writ refused, n. r. e. Of particular significance is the statement set forth in the concurring opinion and quoted with approval from McCormick and Ray, Texas Law of Evidence (1937 Edition), Sec. 386, as follows:

"It is the general rule that an expert witness having testified to an opinion, is permitted to give in evidence, either in direct or cross-examination, an account of the basis upon which he founds the opinion. If this testimony happens to be competent for that purpose it is admissible as independent evidence upon the issues in the case, but even though not so competent, it is still admissible as giving the basis for the previous opinion testified to and thereby enabling the jury to test the value of the opinion evidence."

We, therefore, conclude that the trial court would not have erred if the testimony had been admitted without limitation. However, we do not so construe the tender of the testimony, and in the absence of any showing to the contrary we must assume that the jury observed the limited purpose for which it was offered.

Appellant also contends that the witness Carr gave testimony of the sale price of an improved tract. We have carefully considered this testimony and as we construe it the lot was vacant at the time the sale was made and no other reasonable construction can be attributed to Carr's testimony.

Appellant's Points 4, 5, and 6 are, therefore, overruled.

Finding no error, the judgment of the trial court is in all things affirmed.